**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MAUREEN MAGNIFICO,<br><br>Plaintiff,<br><br>v.<br><br>SEAN DUFFY, Secretary of the U.S. Department of Transportation,<br><br>Defendant. | NO. 1:23-CV-14141<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In November 2022, Maureen Magnifico was fired from her position as a Hazardous Materials Aviation Safety Inspector for the Federal Aviation Administration. R. 82, Pl.'s Resp. to DSOF ¶ 1; R. 72-1, Def.'s Exh. A, Magnifico Dep. at 84:1–6; R. 72-2, Def.'s Exh. B, Magnifico Affidavit ¶ 2.[1] She brings claims for disability discrimination, a hostile work environment, the denial of reasonable accommodations, and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*. R. 14, First. Am. Compl. ¶¶ 16–35.[2] The government moves for summary judgment on all claims. R. 70, Def.'s Mot. Because there is no genuine factual dispute that would allow a reasonable jury to find for Magnifico, the government's motion is granted.

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

## I. Background

In deciding the government's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Magnifico has hearing loss, Attention Deficit Hyperactivity Disorder, Post-Traumatic Stress Disorder, Traumatic Brain Injury, Fibromyalgia, and Hashimoto's disease. R. 86, Def.'s Resp. to PSOF ¶ 2; Magnifico Affidavit ¶ 3. Because of her disabilities, Magnifico suffers from memory problems and speaks loudly. Def.'s Resp. to PSOF ¶¶ 2, 34–35; Magnifico Dep. at 6:4–21, 32:16–33:17. Magnifico's supervisors knew about her disabilities. Def.'s Resp. to PSOF ¶¶ 4, 35; R. 72-3, Def.'s Exh. C, Fernandez Dep. at 23:15–24:2; R. 72-4, Def.'s Exh. D, Healey Dep. at 22:23–23:16, 26:24–28:8.

Magnifico began working as a Hazardous Materials Aviation Safety Inspector in November 2018. Pl.'s Resp. to DSOF ¶ 1; Magnifico Affidavit ¶ 2; Magnifico Dep. at 8:12–14. In that role, she worked with air carriers to inspect potentially hazardous materials—like batteries, paint, and aerosols—on airplanes and mitigate their safety risks to the environment and the public. Pl.'s Resp. to DSOF ¶ 2; Magnifico Dep. at 73:18–74:20. All safety inspectors go through a training program before they can work independently. Pl.'s Resp. to DSOF ¶ 3; Fernandez Dep. at 14:11–21. There is no set length of training, but depending on their experience and skill, safety inspectors typically graduate from the training program in six months to two years. Pl.'s Resp. to DSOF ¶ 4; Fernandez Dep. at 15:7–24. But when Magnifico was fired after four years

with the Federal Aviation Administration, she still had not graduated from the training program. Pl.'s Resp. to DSOF ¶¶ 4–6; Magnifico Dep. at 34:10–15.

Magnifico says that she was poorly trained and managed because of her disabilities.[3] Def.'s Resp. to PSOF ¶ 8; Magnifico Dep. at 36:3–6; R. 83-1, Pl.'s Exh. 1, Magnifico Decl. ¶ 10. For instance, Magnifico received an outdated training manual. Def.'s Resp. to PSOF ¶ 9; Magnifico Decl. ¶ 10. She also says that she was not allowed to take the lead on tasks when she was training. Def.'s Resp. to PSOF ¶ 9; Magnifico Decl. ¶ 10. She did not receive regular check-ins with her supervisor. Def.'s Resp. to PSOF ¶ 10; Magnifico Decl. ¶ 11. And she was not provided proper equipment, such as rain gear, and had to purchase it herself. Def.'s Resp. to PSOF ¶ 11; Magnifico Dep. at 15:19–16:17; Magnifico Decl. ¶ 12.

Magnifico filed an Equal Employment Opportunity complaint (commonly called an EEO complaint) against her supervisor, Angelique Muldrow, covering events up until November 2020. Def.'s Resp. to PSOF ¶¶ 3, 17; R. 83-6, Pl.'s Exh. 6, 2022 Agency Decision at 2–3. The agency issued a final decision in 2022, concluding that there was no discrimination. Def.'s Resp. to PSOF ¶ 17; 2022 Agency Decision at 35. Magnifico then filed a federal lawsuit. *Magnifico v. Buttigieg*, No. 1:22-cv-04255 (N.D. Ill.), R. 1, Compl. But her suit was untimely because she filed her complaint 91 days after receiving the agency decision. *See id.* ¶ 13 (alleging that Magnifico received

[3]Magnifico also says, at various points in the record and her briefs, that she was treated differently because of her gender. *See, e.g.*, R. 83, PSOF ¶ 8; Magnifico Dep. at 18:2–7; R. 84, Pl.'s Resp. Br. at 3. But Magnifico does not bring any gender-based claims. *See generally* First Am. Compl.

the agency decision on May 12, 2022); *id.* at 1 (complaint filed on August 11, 2022); *see also* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407 (2025) (setting a 90-day deadline to file a federal suit). So Magnifico voluntarily dismissed the suit. *Magnifico v. Buttigieg*, No. 1:22-cv-04255 (N.D. Ill.), R. 18, Not. of Dismissal.

In the meantime, in the fall of 2020, Magnifico requested a new supervisor and was reassigned to work under Louis Fernandez. Def.'s Resp. to PSOF ¶ 18; Fernandez Dep. at 11:16–22. But she says that her problems continued. According to Magnifico, she was not given proper support, structure, and oversight compared to her non-disabled colleagues. Def.'s Resp. to PSOF ¶ 29; Magnifico Decl. ¶ 10. For example, she was given shorter deadlines than other trainees and was expected to work independently despite still being in training. Def.'s Resp. to PSOF ¶ 29; Magnifico Dep. at 36:7–37:1, 41:16–20. Fernandez would also unfairly quiz Magnifico—but not other inspectors—about safety regulations. Def.'s Resp. to PSOF ¶ 25; Magnifico Decl. ¶ 22. And a few times, Fernandez discussed Magnifico's memory issues with her in a way that she found inappropriate. Def.'s Resp. to PSOF ¶¶ 23–24; Magnifico Decl. ¶ 21. Fernandez asked Magnifico questions about her memory to make sure that she did not face any safety risks, such as forgetting where she was and accidentally entering an unsafe space on the tarmac at the airport. Def.'s Resp. to PSOF ¶ 23; Fernandez Dep. at 24:16–25:14.

Magnifico also submitted several requests for accommodations for her disabilities to Fernandez. In May 2021, she requested additional time to ask questions, software that would read text out loud to her, and permission to attend doctor

appointments during on-duty time. Pl.'s Resp. to DSOF ¶ 9; R. 72-6, Def.'s Exh. G, June 2021 Letter; R. 72-7, Def.'s Exh. H, July 2021 Letter. Fernandez told her that she could always ask additional questions, installed the text-to-speech software on Magnifico's work computer, and offered to flexibly schedule Magnifico's shifts around her appointments. Pl.'s Resp. to DSOF ¶ 9; June 2021 Letter; July 2021 Letter.

In the fall of 2021, Fernandez changed roles and Magnifico was assigned a new supervisor, Nicholas Healey. Def.'s Resp. to PSOF ¶ 3; Fernandez Dep. at 10:17–23, 12:22–13:10; Healey Dep. at 8:23–9:10. In July 2022, Healey issued Magnifico a Letter of Expectation reminding her that she should not raise her voice in conversation with him. Def.'s Resp. to PSOF ¶ 34; R. 72-9, Def.'s Exh. J, Aug. 2022 Accom. Req. In response to the Letter of Expectation, Magnifico requested permission to use an application on her phone that would monitor how loudly she was speaking. Pl.'s Resp. to DSOF ¶ 11; Aug. 2022 Accom. Req. Healey denied this request because it was not related to her performance. Pl.'s Resp. to DSOF ¶ 12; R. 72-10, Def.'s Exh. K, Nov. 2022 Memo. During 2022, Magnifico also applied for several new positions—one within the Federal Aviation Administration and another position at the Occupational Health and Safety Administration—and was not selected. Pl.'s Resp. to DSOF ¶¶ 22, 27; Magnifico Dep. at 99:10–24; 100:8–17; Magnifico Affidavit ¶ 63.

Ultimately, Magnifico was terminated due to, the government says, her poor performance. In her first few years as a safety inspector, Magnifico received passing performance reviews. Def.'s Resp. to PSOF ¶¶ 5–7; R. 83-2, Pl.'s Exh. 2, 2019 Performance Rating; R. 83-3, Pl.'s Exh. 3, 2020 Mid-Cycle Review; R. 83-4, Pl.'s Exh. 4, 2020

Performance Rating. But at the end of 2021, Fernandez found that she did not meet several critical responsibilities. Def.'s Resp. to PSOF ¶ 20; Fernandez Dep. at 68:12–69:19; 72-5, Def.'s Exh. F, 2021 Performance Rating. For example, safety inspectors complete incident reports, which their supervisors return to them if they contain errors or missing information that needs to be corrected. Pl.'s Resp. to DSOF ¶¶ 14–15; Healey Dep. at 68:19–69:5; 2021 Performance Rating at 3–4. Inspectors are expected to achieve a 90% acceptance rate on their incident reports, but Fernandez returned almost all of Magnifico's reports for correction. Pl.'s Resp. to DSOF ¶¶ 16, 24; Fernandez Dep. at 112:13–15; Healey Dep. at 69:8–16; 2021 Performance Rating at 3–4.

Because Magnifico received failing scores from Fernandez in her 2021 performance review, Healey was required to place her on an "ODP"—an Opportunity to Demonstrate Performance—in 2022. Def.'s Resp. to PSOF ¶ 32; Healey Dep. at 35:5–36:9, 37:16–38:2. During an ODP, an employee must correct the deficiencies found in their performance review, or else they will be reassigned, demoted, or fired. Def.'s Resp. to PSOF ¶ 33; Healey Dep. at 35:5–36:2, 57:22–58:6. After a 90-day evaluation, Healey found that Magnifico still did not meet expectations for her incident reports. Def.'s Resp. to PSOF ¶ 36; Healey Dep. at 68:7–18. Indeed, Healey returned 80% of Magnifico's reports for correction during the ODP. Pl.'s Resp. to DSOF ¶¶ 17–19; Healey Dep. at 85:6–8; R. 72-11, Def.'s Exh. 11, Sept. 2022 Memo. at 2. Because Magnifico could not be demoted (there was no lower position than the training program) and there was no appropriate reassignment, she was fired. Pl.'s Resp. to DSOF ¶ 20; Healey Dep. at 109:16–110:21; Sept. 2022 Memo. at 5.

Magnifico filed another EEO complaint in 2022, which the agency denied in 2023. R. 14, First Am. Compl. Exh. A, 2023 Agency Decision at 3, 23. Magnifico then brought this suit.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

### A. Failure to Accommodate and Disability-Discrimination Claim

The government moves for summary judgment on Magnifico's failure-to-accommodate and disability-discrimination claims. R. 71, Def.'s Br. at 7–15. In her response brief, Magnifico does not respond to the government's arguments or discuss these claims. *See generally* Pl.'s Resp. Br. Indeed, she mentions one of her requests for accommodation in passing, but otherwise does not even recite many of the facts—such as her other accommodation requests—that are relevant to her failure-to-accommodate claim. *See id.* at 9. And she argues that she was terminated in retaliation for protected activity, but not because of her disabilities. *See id.* at 14–15. These claims are thus waived. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

### B. Hostile Work Environment

#### 1. Timeliness

Moving on to the claim for a hostile work environment, as an initial matter the government argues that Magnifico cannot rely on certain time-barred events that were covered by her previous EEO complaint. Def.'s Br. at 5–7. "Federal employees must exhaust administrative remedies before filing suit for violation of the Rehabilitation Act." *Shiba v. Mullin*, 174 F.4th 1025, 1033 (7th Cir. 2026). Specifically, they must seek administrative relief within 45 days of the alleged discriminatory event before they can file a civil action in federal court. *Id.* And their subsequent federal suit is limited by the scope of the administrative proceedings; in other words, a federal

employee "cannot bring claims in the lawsuit not in the" EEO complaint. *McHale v. McDonough*, 41 F.4th 866, 869 (7th Cir. 2022).

Here, Magnifico's first EEO complaint covered events through November 6, 2020. Def.'s Resp. to PSOF ¶ 17; 2022 Agency Decision at 3; *see also* Pl.'s Resp. Br. at 11–12. But she failed to file her federal suit on time, so her claims were time-barred, leading her to voluntarily dismiss the case. Not. of Dismissal. Because she failed to file a timely federal suit based on events before November 6, Magnifico cannot re-raise those events as a basis for her claims in this case. *See Meyer v. McAleenan*, 2019 WL 4580960, at *5–7 (N.D. Ill. Sep. 20, 2019) (holding that the plaintiff cannot raise events that were covered in another, untimely suit arising from a separate EEO complaint).

To be clear, not every event that the government identifies in its brief is time-barred. Some of the events started before November 6, 2020, but they continued after November 6. *See* Def.'s Br. at 6. For instance, Magnifico contends that she was repeatedly denied appropriate training during her four-year stint at the Federal Aviation Administration. Def.'s Resp. to PSOF ¶ 8; Magnifico Dep. at 36:3–6; Magnifico Decl. ¶ 10. Any instances during which Magnifico received poor training after November 6 are timely and may be considered at summary judgment. Perhaps that is why the government's reply brief focuses on two specific events that it contends are time-barred. R. 85, Def.'s Reply Br. at 4. First, on May 1, 2020, Magnifico received an allegedly unwarranted written reprimand by a supervisor in the office, Mr. Kenny. *Id.*; *see* First Am. Compl. ¶ 12(c); Magnifico Dep. at 26:9–13. Second, from November

2018 to November 2022, management denied Magnifico a promotion out of the training program multiple times. Def.'s Reply Br. at 4; *see* First Am. Compl. ¶ 12(q); Def.'s Resp. to PSOF ¶ 28; Magnifico Decl. ¶ 23. The first event is clearly time-barred because it predates November 6. The second event is time-barred to the extent that Magnifico was denied promotions before November 6, but the Court may consider any denials of promotions that happened after that date.

Magnifico responds that the Court can still consider pre-November 6 events because they are all connected to her hostile work environment claim. Pl.'s Resp. Br. at 11–12. It is true that because hostile work environment claims by "[t]heir very nature involve[] repeated conduct," "a hostile-workplace claim is administratively exhausted so long as an aggrieved employee seeks timely review of at least one act comprising his claim." *Shiba*, 174 F.4th at 1034 (cleaned up).[4] But this rule applies "only to the extent that the allegedly hostile actions are part of the same claim." *Id.* (cleaned up). "Several factors guide this relatedness inquiry." *Id.* at 1035 (cleaned up). "The simplest factor is time: A significant gap between alleged incidents of discriminatory harassment can sever the hostile work environment claim." *Id.* (cleaned up). "Also relevant is a change in management and … any corrective action taken by the employer." *Id.*

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Applying those factors here, the pre-November 6 events are not related to the post-November 6 events such that they all make up one hostile work environment claim. The details of the reprimand from Mr. Kenny are far from clear—neither party identifies any part of the record, apart from the First Amended Complaint, that discusses this issue. *See* Def.'s Br. at 6; *see generally* Pl.'s Resp. Br. But from what the Court can discern, the reprimand was a one-off incident that occurred months to years before the timely events in 2021 and 2022 that form the basis of this suit. *See supra* Section I. And without more information about the reprimand, it is unclear whether it is similar in kind to the timely events. "Acts so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single … course of conduct…." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004) (cleaned up).

The pre-November 6 events also involve different managers than the later, timely filed events. Mr. Kenny reprimanded Magnifico, but he is not involved in any other events described in this case. *See supra* Section I. Similarly, Magnifico was supervised by Muldrow until the end of September 2020, when her supervisor was changed to Fernandez and then later Healey. Def.'s Resp. to PSOF ¶ 3; Fernandez Dep. at 11:16–22; Healey Dep. at 9:3–10. So the failure to promote Magnifico out of the training program before November 6, 2020, largely involved a different manager (Muldrow) than any later denials of promotions (Fernandez and Healey). "That different managers were responsible for the acts that form the basis of the claim is yet another strong indicator that they do not belong to the same" hostile work

environment claim. *Shiba*, 174 F.4th at 1035. Thus, these pre-November 6 events are not related to the post-November 6 events, and are not actionable as part of the hostile work environment claim. *See id.*; *Lucas*, 367 F.3d at 727.

Magnifico alternatively argues that the Court should consider any pre-November 6 events as background or context for her hostile work environment claim. Pl.'s Resp. Br. at 11–12. To the extent that these events offer context for her claims, the Court will consider them. *See Mathewson v. Nat'l Automatic Tool Co.*, 807 F.2d 87, 91 (7th Cir. 1986).

**2. Merits**

The Seventh Circuit has assumed without definitively deciding that federal employees can bring hostile work environment claims under the Rehabilitation Act. *Shiba*, 174 F.4th at 1037 n.2. "Surviving summary judgment on a hostile work environment claim requires sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). Here, Magnifico does not raise a genuine dispute that would allow a reasonable jury to find that (1) she experienced an objectively offensive work environment (2) because of her disabilities. Her hostile work environment claim thus fails.

First, "[d]eciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its severity, whether it is physically

threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss*, 816 F.3d at 920. Here, Magnifico offers evidence of the following issues:

- She did not receive proper training;
- She did not receive proper equipment, such as rain gear, and was forced to buy supplies herself;
- She was given an outdated training manual;
- She was not given regular check-ins with her supervisors;
- She was not allowed to take the lead on tasks when training;
- She was given shorter deadlines and more assignments than other trainees;
- She was expected to work independently without proper support and supervision;
- She was unfairly quizzed about safety regulations;
- She was asked whether her memory issues would pose safety issues on the tarmac;
- She received a Letter of Expectation for speaking too loudly;
- She was denied several promotions and transfers, including graduation out of the training program;
- She received unfairly negative performance reviews and had her reports returned to her for correction; and
- She was ultimately terminated.

*See supra* Section I; Pl.'s Resp. Br. at 13–14. The Court views these events in the light most favorable to Magnifico, as it must at summary judgment, and considers the totality of the circumstances. *See Boss*, 816 F.3d at 916, 920. But no reasonable jury could conclude that this conduct—even when viewed in Magnifico's favor—created an objectively offensive work environment. Magnifico "was not physically threatened or humiliated." *Id.* at 920. Some of the events—such as the failure to promote Magnifico and her ultimate termination—"stemmed from [her] own failure to meet legitimate

employment expectations." *Id.* And the rest of her allegations are "a mishmash of complaints about overwork" and improper training "rather than about a place permeated with intimidation, ridicule, and insult." *Id.* There is no doubt that the circumstances gave rise to a difficult workplace for Magnifico, but "[s]uch frustrations do not support a hostile work environment claim." *Id.*; *see also Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) (holding that "normal workplace friction" over transfers and difficulties with managers "was neither severe nor pervasive enough to constitute harassment interfering with [the plaintiff's] work performance").

Second, Magnifico raises no genuine dispute of fact that would allow a reasonable jury to find that this conduct was *because of* her disabilities. Indeed, most of the events that Magnifico describes have no discernable connection to her disabilities. She identifies only two situations that expressly relate to her disabilities, and neither raises a genuine dispute about whether she experienced a hostile work environment because of her disabilities. First, Fernandez questioned whether it was safe for Magnifico to walk around the tarmac given her memory problems. Def.'s Resp. to PSOF ¶ 23; Fernandez Dep. at 24:16–25:14. And second, Magnifico received a Letter of Expectation from Healey about speaking too loudly (which stems from her hearing loss). Def.'s Resp. to PSOF ¶ 34; Aug. 2022 Accom. Req.; Magnifico Dep. at 32:16–33:17. But these comments are not discriminatory and do not show that Magnifico was mistreated because of her disabilities. Rather, both comments relate to legitimate concerns about Magnifico's safety and professionalism. And even if these comments could

be interpreted to show discriminatory animus, Magnifico offers no evidence that connects these isolated comments to the rest of the conduct about which she complains. For example, there is no evidence that Healey's issue with Magnifico's speaking volume caused him to provide her with inadequate training or fail her ODP based on her inaccurate incident reports.

Magnifico also argues that similarly-situated safety inspectors without disabilities were not subjected to a hostile work environment. *See* Pl.'s Resp. Br. at 3–5, 13–14. But Magnifico merely names a few of her colleagues and asserts that they were treated differently. *See id.* She does not provide concrete, specific, and admissible evidence about the differential treatment. For instance, she asserts that she was the only inspector not to receive proper equipment and had to buy the supplies herself. Def.'s Resp. to PSOF ¶ 11; Magnifico Dep. at 15:19–16:17; Magnifico Decl. ¶ 12. But Magnifico does not explain what kind of equipment she was denied—besides "rain gear"—let alone explain how she knows that she was the only one not to receive the equipment or why the equipment was important for her job. Def.'s Resp. to PSOF ¶ 11; Magnifico Dep. at 15:19–16:17; Magnifico Decl. ¶ 12. So the Court lacks the necessary foundation to determine whether a reasonable jury could find that Magnifico was treated differently than non-disabled inspectors.

Nor does Magnifico offer evidence that the other inspectors were similarly situated to her. When relying on a comparator, "a plaintiff must typically show that the two employees engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of

them." *Antonetti v. Abbott Lab'ys*, 563 F.3d 587, 592 (7th Cir. 2009) (cleaned up). But Magnifico does not provide evidence about the other employees' tenure as safety inspectors, nor their work quality and performance reviews. So a reasonable jury would have no basis to conclude that Magnifico's job performance was comparable to the other safety inspectors. *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019) (holding that the plaintiff failed to show coworkers were comparators because he "does not provide any information that would allow a finder of fact to determine that these individuals are indeed similarly situated," including their work history and performance reviews). To the contrary, the record shows that Magnifico's colleagues did not have the same performance problems as her. *See* Def.'s Resp. to PSOF ¶ 32; Healey Dep. at 40:6–9 (Magnifico was Healey's only supervisee to receive an ODP); Healey Dep. at 69:17–23 (none of Healey's other supervisees had issues meeting the expected 10% return rate for incident reports). Thus, even viewing the evidence in Magnifico's favor, she fails to show that the other safety inspectors are proper comparators. *See Hopkins v. Bd. of Educ. of City of Chi.*, 73 F. Supp. 3d 974, 993 (N.D. Ill. 2014). Magnifico's hostile work environment claim thus also fails because she does not raise any genuine dispute about whether she experienced a hostile work environment because of her disabilities.

### C. Retaliation

Magnifico's remaining claim is for retaliation. "To prove such an allegation, an employee must show: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the

two." *Lewis v. Ind. Dep't of Transp.*, 173 F.4th 876, 884 (7th Cir. 2026). Magnifico engaged in statutorily protected activity when she filed her first EEO complaint in 2020. Def.'s Resp. to PSOF ¶ 17; 2022 Agency Decision at 3; *see Anderson v. Donahoe*, 699 F.3d 989, 995 (7th Cir. 2012).

Magnifico also offers evidence that she suffered an adverse action. For retaliation claims, an adverse action is one that "well might have dissuaded a reasonable worker from making … a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (cleaned up). Magnifico shows that she was denied promotions and transfers, and was fired, either of which would dissuade a reasonable worker from making an EEO complaint. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 558 (7th Cir. 2014); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664 (7th Cir. 2006).

The hostile work environment is a different matter. "Harassment can constitute a materially adverse action for retaliation purposes, but … not everything that makes an employee unhappy is an actionable adverse action." *Poullard v. McDonald*, 829 F.3d 844, 857 (7th Cir. 2016) (cleaned up). As explained in the prior subsection, none of the conduct at Magnifico's workplace was overtly hostile, intimidating, or insulting. *See supra* Section III.A.2. Thus, although the bar for an adverse action is lower than what is required to prove an objectively offensive work environment, no reasonable jury could find that the workplace conditions Magnifico experienced would dissuade a reasonable person from taking protected action. *See Poullard*, 829 F.3d at

857. So Magnifico cannot show that a hostile work environment was an adverse action for her retaliation claim.[5]

Turning to the third element, Magnifico's retaliation claim fails because no reasonable jury could find a causal link between her EEO complaint and her promotion denials and termination. The only causal evidence that Magnifico identifies is Fernandez's statement at his deposition that "as a manager [he's] usually not happy when somebody files a complaint" and that he was unhappy when an EEO complaint was filed against him in the past. Def.'s Resp. to PSOF ¶ 18; Fernandez Dep. at 46:20–47:8. But Fernandez went on to clarify that he "tried to stay distant" from the conflict between Magnifico and Muldrow—about whom the first EEO complaint was made—and that he gave Magnifico a clean slate when he became her supervisor. Fernandez Dep. at 48:10–49:1. So Fernandez's statements, viewed as a whole, would not allow a jury to reasonably infer that he retaliated against Magnifico because of her EEO complaint. Indeed, it is not surprising that a supervisor would dislike being the subject of an EEO complaint. But that general sentiment is not enough to show retaliatory motive. *See Mannie v. Potter*, 394 F.3d 977, 983–84 (7th Cir. 2005). So without more evidence, Magnifico does not raise a genuine dispute of fact as to causation.

What's more, Fernandez was not even the decision-maker for almost all of the adverse actions about which Magnifico complains. Healey—not Fernandez—fired

[5]Even if the hostile work environment could be considered an adverse employment action, for the reasons the Court explains next, Magnifico also cannot show a causal connection between her EEO complaint and the hostile work environment.

Magnifico after she did not correct her performance deficiencies during her ODP. Pl.'s Resp. to DSOF ¶ 20; Healey Dep. at 109:16–110:21; Sept. 2022 Memo. at 5. Magnifico argues that she was only placed on an ODP because Fernandez gave her a poor performance review. Pl.'s Resp. Br. at 15. But Magnifico does not argue, nor does any evidence in the record suggest, that Healey was influenced by Fernandez when making the ultimate decision to fire her. *See id.*

Similarly, Fernandez did not deny Magnifico's applications for the two new positions she sought. She first applied for a job at the Occupational Health and Safety Administration. Pl.'s Resp. to DSOF ¶ 22; Magnifico Dep. at 99:10–24; Magnifico Affidavit ¶ 63. Because that job was within an entirely different office, no one within the Federal Aviation Administration, including Fernandez, had any power over Magnifico's application. And Magnifico applied for both positions—the role with the Occupational Health and Safety Administration and another position within the Federal Aviation Administration—in August 2022, when Healey was Magnifico's supervisor. Pl.'s Resp. to DSOF ¶¶ 22, 27; Magnifico Dep. at 99:10–24; 100:8–17; Magnifico Affidavit ¶ 63; Def.'s Resp. to PSOF ¶ 3; Fernandez Dep. at 10:17–23, 12:22–13:10. So Fernandez had no supervisory role over Magnifico when her applications were denied.

Finally, the evidence shows that Magnifico was denied promotions and transfers, and ultimately fired, for a legitimate, non-retaliatory reason: her deficient performance. As just described, Magnifico was fired after she failed the ODP. Pl.'s Resp. to DSOF ¶ 20; Healey Dep. at 109:16–110:21; Sept. 2022 Memo. at 5. Similarly, she

was never promoted out of the training program because Fernandez and Healey believed that she had performance issues. Pl.'s Resp. to DSOF ¶¶ 23–25, 28; Fernandez Dep. at 39:10–41:1; Healey Dep. at 104:2–105:21, 109:16–20. As for the two rejected job applications, Magnifico herself admits that she did not receive the Occupational Health and Safety Administration position because of her negative performance review at the end of 2021. Pl.'s Resp. to DSOF ¶ 22; Magnifico Dep. at 99:10–24. And she was ineligible for the position within the Federal Aviation Administration because she had not graduated out of the training program—again, due to her performance deficiencies—and was two pay levels below the position. Pl.'s Resp. to DSOF ¶¶ 26–27; Healey Dep. at 104:2–105:10. Magnifico does not genuinely dispute any of these facts. *See* Pl.'s Resp. to DSOF ¶¶ 20, 22–25, 26–28. Thus, even viewing the evidence in Magnifico's favor, the record shows that these adverse actions were caused by her poor performance, not retaliatory motive. Magnifico's retaliation claim fails at the third element.

## IV. Conclusion

The government's motion for summary judgment, R. 70, is granted.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 4, 2026